LAND, J.
This is a suit for damages for personal injuries. The ease as presented by the petition is briefly as follows:
Defendant corporation was in June, 1906, ■engaged as a contractor in the erection of a building known as No. 10 for the United States government at the naval reservation near Algiers, in the state of Louisiana.
Plaintiff was employed on the same building as inspector for the government, and on ■or about June 20, 1906, had occasion, in the line of his duty, to use the elevator in said building; that plaintiff ascended in said elevator for about 20 feet, when the operating cable broke, and he and the elevator were thrown violently to the ground, -with the result that one of his legs was broken, and was afterwards amputated to save his life; that plaintiff otherwise suffered grievous bruises and hurts, and also suffered great pain and agony from his injuries, and was confined in the Charity Hospital for about three months; and that he still suffers great pain on account ■of said amputation.
That said elevator had been in a dangerous condition by reason of the old and frayed ■condition of its cable, and that plaintiff, as inspector, notified defendant’s superintendent of such dangerous condition, and inform•ed him that plaintiff, as building inspector, would not permit said elevator to be used unless a new and safe cable was attached thereto.
That plaintiff was informed and believed that a new and safe cable had been attached to said elevator, but has since been informed and verily believes that, instead of putting in a new cable, the defendant knowingly substituted an old and defective cable, and that on the day of the said accident the said pretended new cable had to be spliced twice to prevent the same from parting, and that these facts were well known to the defendant.
That it was no part of plaintiff’s official duty to inspect the machinery, appliances, elevators, and tools of the defendant, but that he notified the defendant of the open and apparent dangerous condition of the elevator, because it was possible that an elevator accident might damage the building belonging to the government.
That plaintiff, as building inspector, had used said elevator for 10 months or more, and that it was the duty of the defendant to furnish good and safe appliances in and about said building for the use of its employes, as well as that of plaintiff in his governmental capacity.
That plaintiff received the injuries complained of through the gross and criminal negligence and carelessness of the defendant in the substitution of a rotten and weak cable, as already stated, and in informing plaintiff that a good and safe cable had been attached to the elevator.
That plaintiff, on account of the injuries sustained by him, and the consequent loss of his leg, and for the physical pain and suffering and mental distress occasioned him, is entitled to recover of the defendant the full sum of $20,000 as damages.
Defendant for answer pleaded the general issue, denied the alleged negligence in the premises, and in the alternative pleaded the contributory negligence of the plaintiff.
The case was tried before the court, and from a judgment in favor of the defendant the plaintiff prosecutes this appeal.
The case involves only questions of fact, and the appellant comes before us not only bearing the burden of. proof, but with the *711 judgment of the trial court against him. Where the evidence is conflicting, the opinion of the trial judge is entitled to great weight before the appellate court.
It is conceded that the plaintiff was injured, as alleged in the petition, by the fall of the elevator, occasioned by the parting of the substituted cable. Plaintiff was inspector of the building, and was on the day of the accident superintending the mixing of concrete for the floors of the second story. An assistant inspector was on the second floor supervising the laying of the concrete. The mixed concrete was conveyed in wheelbarrows to the foot of the elevator, loaded thereon, and then lifted to the second story, where the barrows were unloaded and returned by the elevator. On the morning of June 20, 1906, it was discovered that two strands of the steel cable by which the elevator was operated were broken. Thereupon the cable was removed for the purpose of having it spliced. Another cable, which had been used on the same elevator, was temporarily substituted, and operated for an hour or more, when it was discovered that two of its strands had parted. As the laying of the concrete could not be stopped under the specifications at the stage of the work which had been reached, the superintendent determined to continue the use of the substituted cable, at the same time issuing orders that no person should be allowed to ride on the elevator. Later in the evening the plaintiff got on the elevator as it was about to ascend with two wheelbarrows of concrete, and was carried to the next floor, when the cable parted, and the elevator, with its load, shot down to the ground floor. ' One of the plaintiff’s legs was caught and broken. The disputed questions of fact are whether plaintiff had knowledge or notice of the defective condition of the second cable or was warned not to use the same.
Plaintiff was on the premises from day to day, and his duties required him to continually inspect the work of the contractor. Plaintiff alleges that it was his duty to inspect the elevator, to the end that its fall might not injure the structure, and that it was his custom to use the elevator in ascending and descending. Plaintiff was on the premises during the day of the accident, and was in a position to observe all that took place with reference to the elevator. He testified that on that day he used the elevator some 12 or 15 times. According to plaintiff’s version, sometime before the day of the accident, he noticed that the rope was unraveling, and called the attention of the engineer to the circumstance, saying:
“I will have to stop the elevator, if you don’t have it fixed.”
Plaintiff further testified that he also notified the superintendent, and told him that he could get men on the dock to splice the cable, but did not know what the superintendent did about it. Plaintiff further testified that the elevator was stopped “about four or five-days,” and that he got hurt when it commenced running again; that he supposed that the cable had been repaired; that no one attempted to prevent him from using the elevator. In short, plaintiff testified that he knew nothing about the repairing of the cable, or the substitution of the second cable, on the day of the accident, and had no notice, knowledge, or warning of the dangers of the situation.
Mr. Freret, the assistant inspector, as a witness for the plaintiff, testified that he knew that the original cable had become unsafe ; that it was taken out, and an old, unsafe cable substituted as a temporary makeshift ; that he and everybody else understood the danger of the situation; that the men were kept off the elevator, although one or two used it; that about 10 a. m. on the day of the accident the engineer sent word to the foreman that the cable was giving way, and *713 the superintendent gave orders that everybody should be kept off the elevator.
Several witnesses for the defendant, in■cluding the elevator boy, testified that the plaintiff was warned immediately before the accident not to use the elevator, but persist■ed in so doing.
The superintendent testified that the original cable was removed about 11 a. m. on the •day of the accident for the purpose of being repaired, and an old cable was substituted •while the work of repair was going on; that later in the evening two strands of the cable gave way, and he issued orders for no one to ride on the elevator; that he and the plaintiff looked at the cable, and a conversation •ensued, in substance, that the second cable was in bad condition and it would be unsafe for any one to go on it; that the witness to! d plaintiff that he had issued orders for no one to ride on it, and to make sure would issue them again.
John Gerrett, who was employed in operating the hoisting engine which furnished the power to run the elevator, testified that the •cables were changed on the day of the accident; that the second cable was apparently all right, but after using the same for an hour or more he noticed that two strands •were in bad condition; that he thereupon notified the superintendent, and sent a messenger to warn everybody in the building to keep off the elevator, and to instruct the bellboy to let nobody ride in it; that he stopped the cable, and then the superintendent and the plaintiff examined it; that later the superintendent instructed him to run the cable until 4 o’clock p. m. in order to finish the con•crete work. Plaintiff, testifying in rebuttal, contradicted the witnesses of the defendant on all material points.
We have not attempted to summarize all the evidence; but the foregoing statement shows that the issues of fact in this case depend on the credit to be attached to the testimony of the witnesses. According to the plaintiff’s testimony, he knew nothing of the second cable and of its defective condition. According to the testimony of the superintendent and the engineer, the plaintiff knew of the defects in that cable and must have known of the danger of the situation. The superintendent further testified that he notified plaintiff not to use the elevator. Five other witnesses testified that plaintiff was warned of the danger. Plaintiff’s assistant testified that the danger was known to everybody, that every one was talking about it, and that orders were given to keep all persons off the elevator.
Plaintiff was on the premises all that day, but seems to have seen and heard nothing relative to the cables. If this testimony be true, he was utterly oblivious to his surroundings. His statement that, after the breaking of the strands of the first cable, the elevator stopped four or five days, is inexplicable, in view of the clear and conclusive evidence that the change of cables took place on the very day of the accident. Plaintiff’s testimony is contradicted in material particulars by the testimony of seven or eight witnesses on the part of the defendant, showing at least a clear case of contributory negligence.
Judgment affirmed.